IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | |
|---|---|
| In re: | |
| DIAMOND COMIC DISTRIBUTORS, INC., et al.[1] | Jointly Administered under Case No: 25-10308-DER (Chapter 11) |
| Debtors | |

* * * * * * * * * * * *

| | |
|---|---|
| DIAMOND COMIC DISTRIBUTORS, INC. | |
| Plaintiff | |
| v. | Adv. Proc. No: 25-00231-DER |
| Ablaze, LLC | |
| Defendant | |

* * * * * *

Ablaze, LLC
234 5th Ave., FL 2,
New York, New York 10001

    Counterclaimant and Third-Party Plaintiff

v.

JPMORGAN CHASE BANK, N.A.
3424 Peachtree Road NE, Floor 21
Atlanta, Georgia 30326

    Serve on:
    Corporation Trust, Inc., Resident Agent
    2405 York Road, Suite 201
    Timonium, Maryland 21093-2264

SPARKLE POP, LLC
603 Sweetland Avenue
Hillside, New Jersey 07205

    Serve on:
    Corporation Service Company, Res. Agent
    251 Little Falls Drive
    Wilmington, Delaware 19808-1674

    Third-Party Defendants

* * * * * * * * * * * * *

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are Diamond Comic Distributors, Inc. (3450); Comic Holdings, Inc. (7457); Comic Exporters, Inc. (7458); and Diamond Select Toys & Collectibles, LLC (6585).

ABLAZE, LLC'S THIRD-PARTY COMPLAINT TO DETERMINE THE VALIDITY, PRIORITY OR EXTENT OF A LIEN OR OTHER INTEREST IN PROPERTY

Pursuant to Rule 14(a) of the Federal Rules of Civil Procedure, ABLAZE, LLC ("**Ablaze**" or "**Third-Party Plaintiff**") by and through its undersigned counsel, files this Third-Party Complaint to Determine the Validity, Priority or Extent of a Lien or Other Interest in Property (the "**Complaint**") against Third Party Defendants JPMorgan Chase Bank, N.A. ("JPMorgan") and Sparkle Pop, LLC ("Sparkle Pop"), (together the "Third-Party Defendants") and in support thereof states as follows:

## PARTIES

1. The Third-Party Plaintiff is a Delaware limited liability company with its principal place of business located at 234 5th Ave., FL 2, New York, New York 1001.

2. Based upon information and belief, Third-Party Defendant JPMorgan is a Delaware corporation with is principal place of business located at 3424 Peachtree Road NE, Floor 21 Atlanta, GA 30326.

3. Based upon information and belief, Third-Party Defendant Sparkle Pop, LLC is a Delaware limited liability company with is principal place of business located at 603 Sweetland Avenue, Hillside, NJ 07205.

## JURISDICTION

4. Jurisdiction in this Court is proper pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2) and Standing Order 2012-05 from the United States District Court for the District of Maryland. Pursuant to Rules 7008, 7-12(b), and 7013 of the Federal Rules of Bankruptcy Procedure and Rules 7012-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Maryland, Third-Party Plaintiff consents to the entry of a final judgment or order with respect to this Complaint if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

5. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

6. The underlying bankruptcy proceeding was initiated on January 15, 2025, when Diamond Comic Distributors, Inc., (the "Debtor") filed a Petition for Relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101 et seq., Case No 25-10308 (Bankr. D. Md.).

7. Prior to the Debtor filing bankruptcy, the Third-Party Plaintiff entered into an agreement (the "Consignment Agreement") with one or more of the Debtor's entities governing the terms of their shipments of the consigned "inventory" (the "Stock"), the Debtor's storage and sale of the Stock, and the payment terms governing the Debtor's obligations to pay the Third-Party Plaintiff upon sale of the Stock.

8. At all times relevant to this Complaint, the Debtor was generally known by its creditors to be substantially engaged in selling the goods of others.

9. The Third-Party Plaintiff paid all personal property, inventory and other taxes on the Stock at all times relevant to the Complaint.

10. The Third-Party Plaintiff retained the risk of loss of the Stock at all times relevant to the Complaint.

11. The Third-Party Plaintiff received and/or completed annual reports filed with the pertinent taxing authorities confirming the value of the Stock, and that the Consignors hold title thereto for purposes of tax assessments.

12. The Debtor has made continuous statements at all times relevant to the Complaint that the Stock is owned by the Third-Party Plaintiff and not the Debtor.

13. The Debtor attached, as Exhibit A to its Complaint, a list of the "Defendant Supplied Consigned Inventory" (the "Stock List").

14. The Stock List does not differentiate between stock delivered to the Debtor prior to the petition date ("Prepetition Stock") and stock delivered to the Debtor after the petition date ("Postpetition Stock"), despite the Debtor having previously provided such information to Third-Party Plaintiff's counsel as through a date in August 2025.

15. The differentiation between Prepetition Stock and Postpetition Stock is an important one, as the rights held by in the Stock can be reliant on its delivery date.

16. The Third-Party Plaintiff's Prepetition Stock delivery is reflected as set forth in attached Exhibit 1.

17. The Third-Party Plaintiff's Postpetition Stock delivery is reflected as set forth in attached Exhibit 2.

18. JPMorgan is the Debtor-In-Possession Lender ("DIP Lender") for the Debtor who, through its position as DIP Lender, has asserted a priming first priority senior security interest upon all of the Debtor's right, title, and interest in the Stock and proceeds resulting from any sale or disposition thereof. *See* 25-10308, Dkt. 728.

19. Sparkle Pop was the purchaser of substantially all of the Debtor's assets through a bankruptcy sale (the "Purchase"). *See* 25-10308, Dkts. 407 and 500.

20. The Asset Purchase Agreement specifically excluded consigned inventory, including the Stock from this Purchase from the Inventory being sold to Sparkle Pop. S*ee* 25-10308, Dkt. 385-2. ("[G]oods held on consignment by or on behalf of Seller shall not be considered Inventory for purposes of the Agreement".

21. The Asset Purchase Agreement was accompanied by a Transition Services Agreement ("TSA") between the Debtor and Sparkle Pop, dated April 27, 2025. *See* 25-10308, Dkt. 784-4.

22. Exhibit B of the TSA entitled "Services Provided by the Buyer to Seller" requires Sparkle Pop to store, process, pack and/or ship/dispose of consignment goods in connection with Sparkle Pop's storage of the consignment goods.

23. The Debtor did not assign the Consignment Agreement to Sparkle Pop.

24. The Debtor did not, at any time, direct Sparkle Pop to store, process, pack and or ship/dispose of any Stock.

25. At all times relevant to this action, Sparkle Pop had no authority to sell any Stock.

26. However, Sparkle Pop has sold, and may still be selling, consigned Stock. *See* 25-10308, Dkt. 784.

27. To the best of Third-Party Plaintiff's knowledge Sparkle Pop, without leave of this Court, has sold Third-Party Plaintiff 's Stock valued at not less than $26,207.00.

28. Both JPMorgan's and Sparkle Pop's interest in the Stock are directly related to the Debtor's claim of interest in the Stock, whether as DIP Lender or through the Purchase.

29. In light of both JPMorgan and Sparkle Pop both repeatedly claiming either through pleadings or actions, an interest in the property in dispute both parties are necessary to this proceeding so that the outcome is both fair and efficient.

## COUNT I—Declaratory Judgment
### (The Stock is Property of the Third-Party Plaintiff)

30. The Third-Party Plaintiff incorporates by reference all of the proceeding paragraphs as if fully set forth herein.

31. The Uniform Commercial Code ("UCC") typically governs the law of consignments, and Maryland has codified the UCC provisions in its Commercial Law Article, the Court's analysis must then start by determining if Article 9 actually applies to the transaction at hand, and then if Article 9 does not apply, continue its analysis under Article 2.

32. The Debtor bears the burden of proof with respect to establishing that the transaction regarding the Stock falls under Article 9.

33. Section 9-102(a)(20) of the UCC defines "consignment" as:
"A transaction, regardless of its form, in which a person delivers goods to a merchant for the purpose of sale and:
  (A) the merchant:
    (i) deals in goods of that kind under a name other than the name of the person making the delivery;
    (ii) is not an auctioneer; and
    (iii) is not generally known by its creditors to be substantially engaged in selling the goods of others.
  (B) with respect to each delivery, the aggregate value of the goods is $ 1,000 or more at the time of delivery;
  (C) the goods are not consumer goods immediately before delivery; and
  (D) the transaction does not create a security interest that secures an obligation.

(Uniform Commercial Code § 9-102(a)(20); (Md. Code Ann., Comm. Law, § 9-102(a)(20)

34. If a transaction fails to meet all three requirements of UCC § 9-102(a)(20), it is not governed by UCC Article 9, but instead UCC Article 2 or, if Article 2 does not apply, other

applicable state law. This is true because "consignments intended for security" are excluded from the definition of "consignment" in UCC § 9-102 because they are not bailments but secured transactions, and are subject to all of the provisions of Article 9. The corollary is also true: consignments *not* intended for security are excluded from Article 9, and thus not subject to UCC § 9-319 or any other provision under Article 9.

35. The Debtor cannot meet its burden in establishing each prong of UCC § 9-102 because the Debtor is generally known by its creditors to be substantially engaged in selling the goods of others. Therefore, the Court must turn its analysis to Article 2 and other applicable state law to determine ownership of the Stock.

36. The transaction between the Third-Party Plaintiff and Debtor falls entirely outside of the UCC provisions, including Article 2. Because UCC § 2-326 no longer makes any reference to consignments; and because the Debtor is not a "buyer" under UCC § 2-326 because title never passed to the Debtor, UCC § 2-326 could not apply and common law instead applies.

37. At all times relevant to the Complaint, Third-Party Plaintiff retained title of the Stock.

38. At all times relevant to the Complaint, no security interest attached to the Stock.

39. At all times relevant to the Complaint, the Stock remained property of the Third-Party Plaintiff and not property of the Debtor's bankruptcy estate.

40. The relationship between the Third-Party Plaintiff and the Debtor is not one of bailment because the Third-Party Plaintiff did not have the right to demand the return of the Stock absent the Debtor's default under the terms of the Consignment Agreement.

41. Because the Stock that the Debtor held pursuant to its agreement with the Debtor does not constitute a "consignment" in accordance with UCC § 9-102, Article 2 does not apply.

42. Because neither UCC Article 2 nor Article 9 applies, and under bailment law Third-Party Plaintiff retains title to the Stock transaction throughout the transaction, the Stock is not property of the Debtor's estate and is property of the Third-Party Plaintiff.

43. Because the Stock is not property of the Debtor's estate and is property of the Third-Party Plaintiff, neither JPMorgan nor Sparkle Pop have any colorable claim of ownership in the Stock.

**WHEREFORE**, the Third-Party Plaintiff respectfully requests that the Court enter judgment in its favor and against the Debtor, and enter an order declaring that:

1. The Stock is not subject to UCC Article 9 or Article 2 and under Maryland common law is property of the Third-Party Plaintiff and is not property of the Debtor's estate within the meaning of 11 U.S.C. 541;

2. The Defendants have no legal or equitable interest in the Stock that is superior to that of the Third-Party Plaintiff;

3. The Defendants may not sell or in any way dispose of the Stock;

4. Upon termination of the Consignment Agreement, the Defendant's must return all Stock within their control to the Third-Party Plaintiff in accordance with the terms of the Consignment Agreement's termination provisions; and

5. Granting such other relief as the Court deems just and proper.

### COUNT II—Declaratory Judgment
**(The Postpetition Stock is Property of the Third-Party Plaintiff)**

44. The Third-Party Plaintiff incorporates by reference all of the proceeding paragraphs as if fully set forth herein.

45. Bankruptcy Code § 544 provides: (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

> (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

46. Bankruptcy Code § 552 further provides that "property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case."

47. Section 552 of the Bankruptcy Code effectively narrows the scope of the rights of a § 544 hypothetical lien creditor, confirming that such prepetition lien rights do not apply to property the Debtor acquires post-petition.

48. In accordance with Bankruptcy Code § 552, neither the Debtor nor its secured lenders have any interest in the Postpetition Stock.

49. Bankruptcy Code § 544 similarly does not give the Debtor the interest of a hypothetical judgment lien creditor with respect to the Postpetition Stock.

50. The Debtor has no interest in the Postpetition Stock that the Third-Party Plaintiff delivered postpetition other than the rights derived from the Consignment Agreement with respect to possession and sale of the Postpetition Stock.

51. If the Consignment Agreement is rejected, the Debtor has no interest in the Postpetition Stock, including no right to sell or have possession of the Postpetition Stock.

52. If the Consignment Agreement is terminated, the Debtor is required to return the Postpetition Stock to the Third-Party Plaintiff in accordance with the termination provision in the Consignment Agreement.

53. Even if the Consignment Agreement is not rejected, because the Debtor did not assign the Consignment Agreement to Sparkle Pop, Sparkle Pop is without any authority to sell or distribute the Stock.

**WHEREFORE**, the Third-Party Plaintiff respectfully requests that the Court enter judgment in its favor and against the Debtor, and enter an order declaring that:

1. The Postpetition Stock is not subject to Debtor's 11 U.S.C. 544 hypothetical lien creditor interest and is therefore property of the Third-Party Plaintiff;

2. The Postpetition Stock is not property of the Debtor's estate within the meaning of 11 U.S.C. 541;

3. The Defendants have no legal or equitable interest in the Postpetition Stock that is superior to that of the Third-Party Plaintiff;

4. The Defendants have no right to sell or distribute the Stock;

5. The Debtor has no authority to direct Sparkle Pop to sell or distribute the Stock;

6. The Defendants must immediately return all Postpetition Stock in their control in accordance with the termination provisions set forth in the Consignment Agreement;

7. The Defendants may not sell or in any way dispose of the Postpetition Stock; and

8. Granting such other relief as the Court deems just and proper.

Dated: October 23, 2025         Respectfully submitted,

/s/ Catherine Keller Hopkin
Catherine Keller Hopkin (28257)
YVS Law, LLC
185 Admiral Cochrane Drive, Suite 130
Annapolis, Maryland 21401
(443) 569-0788
chopkin@yvslaw.com

Counsel for Ablaze, LLC

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 23rd day of October 2025, notice of filing the foregoing Third-Party Complaint was served by CM/ECF to those parties listed on the docket as being entitled to such electronic notices, which parties are identified on the attached service list.

/s/ Catherine Keller Hopkin
Catherine Keller Hopkin

**The following parties received CM/ECF notice of the filing:**

Turner Falk, Esquire
(turner.falk@saul.com)
Counsel for Debtors
Saul Ewing LLP
1500 Market Street
Center Square West, 38th Floor
Philadelphia, Pennsylvania  19102

Jeffrey C. Hampton I, Esquire
(jeffrey.hampton@saul.com)
Counsel for Debtors
Saul Ewing LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, Pennsylvania  19102

Adam H. Isenberg, Esquire
(adam.isenberg@saul.com)
Counsel for Debtors
Saul Ewing LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, Pennsylvania  19102

Mark Minuti, Esquire
(mark.minuti@saul.com)
Counsel for Debtors
Saul Ewing LLP
1201 North Market Street, Suite 2300
Wilmington, Delaware  19899

Jordan Rosenfeld, Esquire
(jordan.rosenfeld@saul.com)
Counsel for Debtors
Saul Ewing LLP
1001 Fleet Street, 9th Floor
Baltimore, Maryland  21202-4359

Nicholas Smargiassi, Esquire
(nicholas.smargiassi@saul.com)
Counsel for Debtors
Saul Ewing LLP
1201 North Market Street, Suite 2300
Wilmington, Delaware  19801

Paige Noelle Topper, Esquire
(paige.topper@saul.com)
Counsel for Debtors
Saul Ewing LLP
1201 North Market Street, Suite 2300
Wilmington, Delaware  19801

4920-7449-8931, v. 1