**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| In re:<br><br>DIAMOND COMIC DISTRIBUTORS, INC., *et al.*<br><br>Debtors. | Case No. 25-10308 (DER)<br><br>Chapter 11<br><br>(Jointly Administered) |
| MORGAN W. FISHER,<br>CHAPTER 7 TRUSTEE,<br><br>Plaintiff,<br><br>- against -<br><br>ABLAZE LLC, ACTION LAB ENTERTAINMENT, INC, AMERICAN MYTHOLOGY PRODUCTIONS, LLC d/b/a AMERICAN MYTHOLOGY PRODUCTIONS, LLC, AVATAR PRESS, INC., BATTLE QUEST COMICS, INC., BOOM ENTERTAINMENT, LLC, FANTAGRAPHICS BOOKS, INC., GREEN RONIN PUBLISHING, LLC d/b/a GREEN RONIN PUBLISHING, HERMAN & GREER COMMUNICATIONS, LLC d/b/a HERMES PRESS, LIVING THE LINE, LLC d/b/a LIVING THE LINE, PAIZO, INC., ZENESCOPE ENTERTAINMENT, INC.,<br><br>Defendants. | Adv. Proc. No. 25-00231-DER,<br>No. 25-00232-DER,<br>No. 25-00235-DER,<br>No. 25-00385-DER,<br>No. 25-00237-DER,<br>No. 25-00239-DER,<br>No. 25-00245-DER,<br>No. 25-00247-DER,<br>No. 25-00249-DER,<br>No. 25-00251-DER,<br>No. 25-00256-DER,<br>No. 25-00262-DER |
| ABLAZE LLC, ACTION LAB ENTERTAINMENT, INC, AMERICAN MYTHOLOGY PRODUCTIONS, LLC d/b/a AMERICAN MYTHOLOGY PRODUCTIONS, LLC, AVATAR PRESS, INC., BATTLE QUEST COMICS, INC., BOOM ENTERTAINMENT, LLC, FANTAGRAPHICS BOOKS, INC.. GREEN RONIN PUBLISHING, LLC d/b/a GREEN RONIN PUBLISHING, HERMAN & GREER COMMUNICATIONS, LLC d/b/a HERMES PRESS, LIVING THE LINE, LLC d/b/a LIVING THE LINE, PAIZO, INC., ZENESCOPE ENTERTAINMENT, INC.,<br><br>Counterclaimants and Third-Party Plaintiffs, | |

- against -

JPMORGAN CHASE BANK, N.A. and SPARKLE POP, LLC

Third-Party Defendants.

**MEMORANDUM OF LAW IN OPPOSITION TO THIRD-PARTY PLAINTIFFS' MOTIONS TO COMPEL DISCOVERY**

# TABLE OF CONTENTS

**Page:**

I. Preliminary Statement ....................................................1

II. Factual Background ....................................................2

III. Argument ....................................................4

A. The Inspection Requests Lack Any Relevance to the Adversary Proceedings .......5

B. The Inspection Request Has Been Rendered Moot by the Proposed Settlement of the Underlying Proceedings....................................................6

C. The Third-Party Plaintiffs Have not Pursued Less Burdensome Means to Obtain the Discovery it Seeks ....................................................7

D. The Conditions Requested By Sparkle Pop are Reasonable and Necessary ..........8

# TABLE OF AUTHORITIES

**Cases**

*Belcher v. Bassett Furniture Indus., Inc.*, 588 F.2d 904, 907 (4th Cir.1978) .... 4, 5

*McConnell v. Canadian Pacific Realty Co.*, 280 F.R.D. 188, 191 (M.D. Pa. 2011) .... 4

*Volt Power, LLC v. Butts*, No. 7:19-CV-00149-BO, 2021 WL 4188428, at *1 (E.D.N.C. Aug. 17, 2021) .... 5

**Rules**

Federal Rule of Civil Procedure ("FRCP") 34(a)(2) .... 4

Third-Party Defendant Sparkle Pop, LLC ("Sparkle Pop"), by and through its undersigned counsel, respectfully submits this opposition to the motions (collectively the "Motion") of the above-captioned third-party plaintiffs (collectively, the "Third-Party Plaintiffs") seeking to compel their respective demands for inspection. In support of its opposition, Sparkle Pop states as follows:

## I. PRELIMINARY STATEMENT

Third-Party Plaintiffs seek a highly intrusive inspection of Sparkle Pop's distribution facility, on the ostensible ground that such discovery is needed in connection with these adversary proceedings. But the requested inspection has nothing to do with the sole issues at dispute in the adversary proceedings: whether the Third-Party Plaintiffs or the Debtors own the consigned inventory located in that facility. Moreover, Third-Party Plaintiffs apparent urgency in seeking this irrelevant discovery is entirely inexplicable in light of its representation to this Court that it has settled the underlying dispute with the Trustee.

The Motion, far from explaining why Third-Party Plaintiffs are seeking irrelevant discovery in an apparently settled case, confirms what Sparkle Pop suspected: the inspection requests are transparent fishing expeditions, seeking to dredge up some information that might support baseless and hypothetical claims that they may wish to bring against Sparkle Pop in the future. Thus, the requests do not seek any facts or information relevant to the Third-Party Plaintiffs claims to ownership over the consigned goods. Rather, by their own words, they seek to "audit" Sparkle Pop's facility, a glaringly improper purpose for a litigation discovery device.

Notwithstanding the blatant impropriety of the inspection requests, however, Sparkle Pop bent over backwards trying to reach a reasonable resolution of the dispute. The parties engaged in meet-and-confer discussions by email over the course of a week, during which Sparkle Pop made multiple unilateral concessions and provided supporting data. After the last round of Sparkle Pop's concessions, however, when Sparkle Pop believed that the parties were negotiating in good faith

towards a resolution, counsel for the Third-Party Plaintiffs abruptly terminated discussions without further explanation and brought this Motion. In that Motion, Third-Party Plaintiffs made several misrepresentations regarding the negotiations in an attempt to engage in a fishing expedition. As discussed further below, Sparkle Pop respectfully submits that neither the inspection requests, nor the meet-and-confer discussions concerning them, were brought by the Third-Party Plaintiffs in a good faith effort to seek genuine relevant discovery in these matters.

## II. Factual Background

The Third-Party Plaintiffs are publishers who each allege they that they entered into consignment arrangements with one or more of the Debtors. On September 9, 2025, the Debtors filed adversary actions against the Third-Party Plaintiffs, alleging that the Third-Party Plaintiffs had not perfected any security interest in their consigned goods and seeking a declaration that Debtors' interest in the consigned goods, located in a Mississippi distribution facility (the "Warehouse"), constitutes the Estate's property.

On or around October 23, 2025, the Third-Party Plaintiffs filed third-party complaints against Sparkle Pop. The substantially identical complaints allege that the Third-Party Plaintiffs entered into consignment agreements pursuant to which they consigned stock (the "Stock"), consisting of goods delivered both before and after the Bankruptcy Petition. They further allege that the Debtors sold certain assets to Sparkle Pop but did not assign the consignment agreements. They allege Sparkle Pop sold Stock without authorization from the Third-Party Plaintiffs. As relief, the Third-Party Plaintiffs seek two declarations: (1) that they own the Stock, because the Stock does not qualify as a consignment pursuant to the UCC, and (2) the post-petition Stock is not property of the Debtors Estate and that Sparkle Pop had no rights with respect to the Stock.

On July 3, 2026, Third-Party Plaintiffs each served Amended Subpoenas on Sparkle Pop, seeking inspection of the Warehouse (Exhibit 5 to the Motions of Third-Party Plaintiffs). The

Subpoenas demanded that Sparkle Pop make the Stock at the Warehouse available for inspection by a person or persons designated by the Third-Party Plaintiffs. On July 22, 2026, Sparkle Pop served its Responses and Objections to Subpoenas, raising a number of objections. In particular and without limitation, Sparkle Pop questioned the relevance of the Subpoenas, pointed out that the Third-Party Plaintiffs had not sought discovery through less intrusive means, and objected that the subpoenas would unreasonably compromise site security, disrupt company business, and impose unreasonable burdens and costs of compliance. A copy of the objection as served on one of the Third Party Plaintiffs attached as Exhibit 1.

Following the objections, the parties met-and-conferred to discuss a potential resolution of the dispute. (The email chain containing the parties' negotiations is attached as Exhibit 2). Sparkle Pop initially proposed that the Third-Party Plaintiffs repay Sparkle Pop for the substantial rent and processing fees it has incurred in connection with its handling and storage of the Stock, as well as $1,000 per hour of the inspection to defray the costs Sparkle Pop expected to incur in connection with the inspection itself. In support of the latter, Sparkle Pop provided documentary back-up (*see* Exhibit 3). However, Sparkle Pop later compromised on both points, dropping the rent request entirely and reducing the proposed defrayal charge to $639.94 per hour. The back-up for those costs was included with the proposal. In that compromise proposal, transmitted on August 12, 2026, Sparkle Pop proposed the following overall resolution:

1. The inspection would be carried out by Debtor's former warehouse manager, Shawn Hamrick, with the assistance of persons designation by the Third-Party Plaintiffs, as preapproved by Sparkle Pop;

2. The Third-Party Plaintiffs to pay Sparkle Pop $639.94 per hour, to defray the significant costs Sparkle Pop would incur in connection with the inspection.

3. The inventory count for the inspection shall be a basic cycle count (i.e., a general inventory count by carton),

4. The inspection shall be completed no later than 10 business days from commencement of the inspection, shall be no more than one, 8-hour shift per day, and shall be conducted only after business hours or 5:00 p.m. Central Time.

5. Sparkle Pop shall not be required to stage the Consigned Inventory for the inspection,

6. No materials shall be removed from the Warehouse during the inspection, which would be strictly limited to Third-Party Plaintiff's consigned inventory, identified by location numbers.

Exhibit 2.

Counsel for the Third-Party Plaintiffs agreed to points 3 through 6 of the proposal, with certain qualifications. They objected to Items 1 and 2. On items 1, counsel objected to what it called "unilateral control" over the inspector but did not propose any compromise candidate. Counsel further rejected Item 2 and instead brought this motion to compel.

## III. ARGUMENT

Requests to inspect premises such as the Warehouse are governed by Federal Rule of Civil Procedure ("FRCP") 34(a)(2), as incorporated by the Bankruptcy Rules. Whether or not to permit an inspection pursuant to Rule 34 is within a court's discretion. *Belcher v. Bassett Furniture Indus., Inc.*, 588 F.2d 904, 907 (4th Cir.1978) (internal citations omitted). In exercising that discretion, "the touchstone for analysis of a Rule 34 inspection request is reasonableness," and the court may therefore impose topical, temporal or other conditions before permitting discovery. *McConnell v. Canadian Pacific Realty Co.*, 280 F.R.D. 188, 191 (M.D. Pa. 2011).

Third-Party Plaintiffs, as the requesting parties, bear the burden of proving the relevance of the requested information. *McConnell*, 280 F.R.D. at 193. Moreover, a heightened relevance

standard applies to physical inspection requests, beyond the usual Rule 26 standard, because "entry upon a party's premises may entail greater burdens and risks than mere production of documents." *Belcher*, 588 F.2d at 908. In addition, even if sufficient relevance is established, the reviewing court "must consider the potentially harmful effect of the requested discovery" on the responding party in deciding either to permit the inspection or what limiting conditions to impose. *Id.* As part of that inquiry, shifting the cost of compliance to the requesting party is appropriate "if the responding party has incurred significant expenses." *Volt Power, LLC v. Butts*, No. 7:19-CV-00149-BO, 2021 WL 4188428, at *1 (E.D.N.C. Aug. 17, 2021).

**A. The Inspection Requests Lack Any Relevance to the Adversary Proceedings**

The Third-Party Plaintiffs notably do not even attempt to explain or justify the relevance of the inspection. They cannot. These adversary proceedings present narrow and particular legal issues: whether the Third-Party Plaintiffs are the owners of the Stock and whether Debtors have any countervailing ownership rights. Third-Party Plaintiffs assert no monetary claims against Sparkle Pop: no torts, no contract claims, nothing at all. They only seek declaratory judgments that they own the Stock.

Third-Party Plaintiffs contend they seek the inspections as an "audit" of the consigned Stock and to assess its "condition" and "status." But who owns legal title to the Stock – the only matters in dispute in the adversary actions – does not turn in any way on the condition or "status" of the Stock. It is a purely legal issue, for which the only relevant factual questions are the circumstances under which the Stock came to be in Warehouse in the first place, not their present condition.

The Motion instead seeks to justify the inspection requests by referring to innuendo and speculation. It asserts that Sparkle Pop "may" be continuing to sell inventory from the Warehouse.

It alludes to alleged "deficiencies" in Sparkle Pop's "reporting" but points to no efforts to directly address that issue nor how the inspection request relates to that concern. It accuses Sparkle Pop of "apparently appl[ying] a flat return rate as to each consignor," when in fact Sparkle Pop booked based on individual consignor's return.

None of these speculative accusations relate to specific claims at issue in the adversary proceedings. Rather, they relate to hypothetical claims that the Third-Party Plaintiffs might bring against Sparkle Pop, but have not, presumably because they lack a good faith basis to bring them. By referring to this innuendo, Third-Party Plaintiffs give away the game. The inspection requests have nothing to do with the existing adversary proceedings, but are blatant fishing expeditions seeking to dig up material to support the meritless and unsubstantiated claims that they clearly wish to bring against Sparkle Pop but lack an evidentiary basis to assert. That is not a valid basis for a Rule 34 inspection of physical premises.

Even more troubling is the context in which the requests arise. Sparkle Pop and the Third-Party Plaintiffs have been attempting to negotiate a resolution of their disputes. The Third-Party Plaintiffs seek access to funds generated by sale of the Stock as well as possession of the Stock itself, but Sparkle Pop has asserted offsetting rights to receive payment of rent for the long-term storage of the Stock as well as the processing fees associated with the sales. In this context, the otherwise irrelevant inspection requests represent an attempt to use the discovery process as leverage in the settlement discussion, to further the Third-Party Plaintiffs' goal of getting the consigned goods out of the Warehouse without remitting fair payment to Sparkle Pop for their storage and processing.

### B. The Inspection Request Has Been Rendered Moot by the Proposed Settlement of the Underlying Proceedings

The subpoenas were served in connection with the adversary proceedings brought by the

Trustee against the Third-Party Plaintiffs. The sole legal issues in dispute in these proceedings, as well as the third-party proceedings brought the Third-Party Plaintiffs, concern whether the Third-Party Plaintiffs own the Stock, as well as whether the Estate retains any rights concerning the Stock. It is for discovery in that dispute that the Subpoenas were allegedly served.

However, the Trustee and Third-Party Plaintiffs have settled their dispute and submitted that settlement for approval. Pursuant to that settlement, the Trustee is: (a) stating that the consignors own the goods in the warehouse, (b) assigning his claims in these cases to the consignors, and (c) abandoning his claims to any of the consigned goods in the warehouse. *See* ECF 1309. Although Sparkle Pop has filed an objection to the motion to approve this settlement, it has not objected (and does not object) to the Trustee's abandonment of the Estate's claims to the Stock. Because there is no remaining dispute as to the ownership of the Stock, the underlying adversary proceedings are effectively defunct, and if the proposed settlement between the consignors and the Trustee is approved, they will be entirely rendered moot. Under these circumstances, it is improper for the Third-Party Plaintiffs to simultaneously petition this Court to approve a settlement that resolves the adversary proceedings in their favor, while also invoking these same proceedings as the ostensible basis for seeking a highly intrusive physical inspection of Sparkle Pop's premises.

### C. The Third-Party Plaintiffs Have not Pursued Less Burdensome Means to Obtain the Discovery it Seeks

The Third-Party Plaintiffs argue that they seek the proposed inspection to resolve certain questions about Sparkle Pop's reporting of the inventory. But that explanation rings hollow, given that the Third-Party Plaintiffs have not pursued any of the many available and less intrusive means to obtain discovery on that subject. They have not served interrogatories requesting further detail

on the inventory. They have not sought production of any explanatory documentation. They have not sought the testimony of any witnesses with relevant knowledge, nor served Requests for Admission to test the truth of their speculative allegations. Given that inspections to enter and inspect premises "entail greater burdens and risks" than other discovery devices, it would be appropriate for this Court to exercise its discretion and direct the Third-Party Plaintiffs to use these other devices first, before prematurely resorting to an inspection request.

### D. The Conditions Requested By Sparkle Pop are Reasonable and Necessary

The Motion mispresents the negotiations between the parties concerning the inspection request. It wrongly highlights the alleged "requirement that the Trustee and Sparkle Pop enter into an agreement concerning payment of back rent owed at the Warehouse" as a basis for bringing the motion, inexplicably failing to apprise this Court that Sparkle Pop agreed to drop that condition.[1]

It then also wrongly accuses Sparkle Pop of asserting "sole right to designate the party permitted to conduct the inspection of the Warehouse." Sparkle Pop never asserted such a right. On the contrary, Sparkle Pop ***proposed*** an inspector to be jointly agreed to be the parties: namely, Shawn Hamrick, the former Diamond Warehouse manager, an independent party with the relevant expertise to conduct an efficient inspection. Despite Mr. Hamrick's obvious suitability and independence, the Third-Party Plaintiffs refused to consider him, offering no explanation and proposing no alternative. Sparkle Pop was willing to consider suitable and appropriate alternatives,

---

[1] Although Sparkle Pop agreed to that compromise, the discussion highlights the fundamental lack of fair play in connection with the Motion. On the one hand, the Third-Party Plaintiffs are seeking to use an Adversary Proceeding that they claim to have settled as an excuse to seek an intrusive inspection of Sparkle Pop's facilities, with the apparent intention of using the demand as leverage against Sparkle Pop. At the same time, the purported object of the inspection – the Stock – has been stored in Warehouse without payment for over a year. Fairness requires that Sparkle Pop be compensated for those costs.

but the Third-Party Plaintiffs offered none. Thus, it is Third-Party Plaintiffs, not Sparkle Pop, who assert the "sole right to designate the party permitted to conduct the inspection of the Warehouse."

Third-Party Plaintiffs also complain about Sparkle Pop's request that they be informed and given the opportunity to approve in advance any assistants to accompany the inspector. But that is hardly a burdensome request and Third-Party Plaintiffs provide no reason or explanation why they cannot agree. On the contrary, it is entirely reasonable for Sparkle Pop to vet anyone who seeks to enter a secure Warehouse facility containing property and goods belonging to other parties.

Finally, Third-Party Plaintiffs object to defraying the reasonable costs of their demanded inspection. But given the dubious relevance of the inspection in the first place, it is more than reasonable to require Third-Party Plaintiffs to reimburse the costs of their intrusive demands. Moreover, the amounts requested are reasonable and properly documented. Attached as Exhibit 3 is a copy of the consignment cost estimate Sparkle Pop's counsel sent to counsel of the Third-Party Plaintiffs during the email meet-and-confer negotiations. As documented in the Exhibit, Sparkle Pop expects to incur $770.32 per hour in labor, overhead, and equipment costs associated with facilitating the access sought by Third-Party Plaintiffs and to maintain required security. In its efforts to compromise, Sparkle Pop agreed to accept further reduced compensation at $639.94/hour. Again, Third-Party Plaintiffs refused without making a proposal of their own, and instead brought the Motion.[2]

Third-Party Plaintiffs object to the proposed request as "premium compensation." But they have submitted no facts or evidence of what appropriate "market rate" costs would be, much less

[2]Third-Party Plaintiffs assert this proposal includes "an unexplained 'thirty percent markup.'" Sparkle Pop's original proposal of $1,000 per hour did include such a markup, as Exhibit 3 indicates. However, the $639.94/hour proposal is less than the total costs, even excluding the markup.

that the Sparkle Pop proposal is excessive. Indeed, when Sparkle Pop asked for such data, the response of the Third-Party Plaintiffs was to file this Motion instead. The proposed $639.94/hour is reasonable, and necessary to avoid the unfair result of Sparkle Pop bearing the full costs of the unnecessary inspections.

## CONCLUSION

For the reasons stated above, Sparkle Pop respectfully requests that this Court deny the Third-Party Plaintiffs' motions to compel and quash the subpoenas, or, in the alternative, issue an order directing that the inspections may go forward only on the conditions proposed in the email of Jodie Bekman, dated August 12, 2026, as attached as Exhibit 2 to this motion.

Respectfully submitted,

Dated: September 8, 2026

*/s/ Jodie E. Bekman*

Jodie E. Bekman (Bar No. 26004)
Gordon Feinblatt LLC
1001 Fleet Street, Suite 700
Baltimore, MD 21202
T/F: (410) 576-4082
jbekman@gfrlaw.com

*Attorneys for Sparkle Pop, LLC*

**CERTIFICATE OF SERVICE**

I certify that on this 8th day of September, 2026, I caused the foregoing *Opposition* to be electronically filed with the Clerk of the Court using the CM/ECF system, which will automatically send email notifications to all parties and counsel of record.

*/s/ Jodie E. Bekman*
Jodie E. Bekman